1 | Edward S. Chang (State Bar No. 241682)
Justin Potesta (State Bar No. 314133)
2 | JONES DAY
3161 Michelson Drive, Suite 800
3 | Irvine, California 92612
(T) 949.851.3939
4 | (F) 949.553.7539
echang@jonesday.com
5 | jpotesta@jonesday.com

6

Attorneys for Defendant
7 | WALMART INC.

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11 | SOFIA MAYNEZ, an individual, on
behalf of herself and all others
12 | similarly situated,

Case No. 2:20-cv-0023

13 |            Plaintiff,

14 |      v.

**DEFENDANT WALMART
INC.'S NOTICE OF REMOVAL
OF CIVIL ACTION FROM
STATE COURT**

15 | WALMART, INC., a Delaware
Corporation; and DOES 1-50,
16 | inclusive,

17 |            Defendant.

18

19

20

21

22

23

24

25

26

27

28

**TO PLAINTIFF SOFIA MAYNEZ AND ALL ATTORNEYS OF RECORD, AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and/or 1453, Defendant Walmart Inc. ("Walmart") hereby removes this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California. In support of this Notice of Removal, Walmart avers as follows:

## PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS

1. On October 16, 2019, Plaintiff Sofia Maynez filed a putative nationwide class action complaint against Walmart in *Maynez v. Walmart, Inc.*, Case No. 19STCV36866, in the Superior Court of the State of California, County of Los Angeles (the "State Court Action"). (*See* Exhibit 1 at 16-28 ("Complaint").)

2. In the State Court Action, Plaintiff alleges that the prices for certain items advertised in Walmart's mobile application (or "Walmart app," as used in Plaintiff's Complaint) are higher than the actual prices for the same items in the physical Walmart store(s) Plaintiff visited. (*See* Complaint at ¶ 1.) On this basis, Plaintiff asserts claims for (1) violation of California's Unfair Competition Law ("UCL") under California Business & Professions Code § 17200, *et seq.*; (2) violation of California's Consumer Legal Remedies Act ("CLRA") under California Civil Code § 1750, *et seq.*; (3) violation of California's False Advertising Law ("FAL") under California Business & Professions Code § 17500, *et seq.*

3. Plaintiff seeks to assert these claims on behalf of a putative nationwide class of "[a]ll users of [Walmart's] e-commerce app who viewed on the app a quoted price for an item on sale at one of [Walmart's] stores, and

- 1 -

whom purchased the quoted item at that store at a price higher than the price listed on [Walmart's] e-commerce app at the time of purchase, from four years prior to the filing of the complaint to the present."  (Complaint at ¶ 17(2).) Plaintiff also seeks to certify a so-called "Injunctive Relief Class," defined as "[a]ll users of [Walmart's] e-commerce app who view on the app a quoted price for an item on sale at one of [Walmart's] stores, and whom are offered the quoted item at that store at a price higher than the price listed on [Walmart's] e-commerce app, at the time of the attempted purchase.  (*Id.* at ¶ 17(1).)

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

4.     This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(d), part of the Class Action Fairness Act ("CAFA").  Under § 1332(d), federal courts have original diversity jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); and (3) the number of members of all proposed plaintiff classes in the aggregate exceeds 100.  *See* 28 U.S.C. § 1332(d)(5)(B).  The Ninth Circuit has recognized that "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Even more recently, the Ninth Circuit reiterated the Supreme Court's admonition that "no antiremoval presumption attends cases invoking CAFA." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)).

5.     All three requirements of CAFA jurisdiction are satisfied in this case.

**A.     Minimal Diversity Exists**

6.     First, minimal diversity exists because Plaintiff and Walmart, the only named parties in this case, are citizens of different states.

7.     According to her Complaint, Plaintiff is a citizen of California. (Complaint at ¶ 1.)

8.     Walmart, on the other hand, is a Delaware Corporation with its principal place of business in Arkansas. (*Id.*)  Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."  Thus, Walmart is a citizen of Delaware and Arkansas.

9.     Because Plaintiff is a citizen of California and Walmart is a citizen of Delaware and Arkansas, the diversity requirement for CAFA jurisdiction is satisfied.  *See* 28 U.S.C. § 1332(d)(2) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**B.     The Amount In Controversy Exceeds $5,000,000**

10.     Although Walmart does not concede that either Plaintiff or any putative class member is entitled to any recovery from Walmart whatsoever, for purposes of removal jurisdiction, Plaintiff's Complaint places in controversy more than $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  A notice of removal must include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (citations omitted).  "In measuring the amount in controversy, a court must assume that the allegations

NOTICE OF REMOVAL OF CIVIL ACTION
Case No. 2:20-cv-0023

1   of the complaint are true and that a jury will return a verdict for the plaintiff

2   on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536

3   F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citations omitted).  "The ultimate

4   inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not

5   what a defendant will actually owe." *Id.* (citations omitted).

6        11.    The gravamen of Plaintiff's Complaint is that Walmart has

7   misrepresented and/or falsely advertised pricing to consumers like Plaintiff,

8   resulting in overpayment for products. (Complaint at ¶¶ 1, 9-16.) Specifically,

9   Plaintiff alleges that she paid $12.54 for Huggies Wipes that were advertised

10  at $5.44 in the Walmart app, and that she paid $31.84 for Huggies Pull Ups

11  that were advertised at $8.97 in the Walmart app. (*Id.* at ¶¶ 1, 16.) As a result,

12  in total, Plaintiff allegedly paid $29.97 more for these two items than the prices

13  advertised in the Walmart app.

14       12.    For this asserted wrong, Plaintiff seeks recovery of "restitution

15  and disgorgement of all money and property wrongfully obtained by"

16  Walmart, "[a]n award of general damages," "[a]n award of special damages,"

17  and "[e]xemplary damages in light of Walmart's fraud, malice, and conscious

18  disregard for the rights of Plaintiff and putative class members," among other

19  things. (Complaint at p. 26.) Plaintiff also seeks "attorneys' fees and expenses

20  pursuant to all applicable laws" and "costs of suit." (*Id.*)

21       13.    Even assuming that Plaintiff seeks recovery of only $29.97 for

22  each putative class member in this case (the amount of harm Plaintiff

23  purportedly suffered from overpayment), the amount in controversy well

24  exceeds $5,000,000 based on the allegations in Plaintiff's Complaint.  To wit,

25  Plaintiff alleges that the putative classes consist of "hundreds of thousands" of

26  Walmart customers, "if not more."  (Complaint at ¶ 18.)  Plaintiff further

27

28

1  asserts that Walmart "is a multinational corporation" that "sell[s] goods to
2  consumers throughout the country."  (*Id.* at ¶ 2.)   Thus, even presuming
3  Plaintiff means only 200,000 putative class members when she seeks to
4  represent "hundreds of thousands" of Walmart customers, the damages sought
5  on behalf of this hypothetical class would be $5,994,000 ($29.97 x 200,000).
6  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual
7  class members shall be aggregated to determine whether the matter in
8  controversy exceeds the sum or value of $5,000,000, exclusive of interest and
9  costs.").

10         14.     Moreover, Plaintiff's class definition is not limited to consumers
11  who, like Plaintiff, purchased only Huggies Wipes or Huggies Pull Ups.
12  Plaintiff seeks to represent a nationwide class of "*[a]ll users* of [Walmart's] e-
13  commerce app who view on the app a quoted price for *an item* on sale at one
14  of Defendant's stores, and whom are offered the *quoted item* at that store at a"
15  higher price.  (*Id.* at ¶ 17 (emphasis added).)  Plaintiff does not otherwise
16  define or explain what she means by "item" as that term is used in the
17  Complaint.  Thus, *any item* for sale by Walmart via the Walmart app and in its
18  brick-and-mortar stores may be at issue based on Plaintiff's class definition.
19  No matter how calculated, the prospective damage or restitutionary figure for
20  Plaintiff's putative claim easily exceeds $5,000,000 across potentially tens of
21  thousands of items advertised for sale by Walmart.   (*See, e.g.*,
22  www.walmart.com/search/.)

23         15.     Plaintiff's claims for "special" and/or "exemplary" (punitive)
24  damages must also be factored into the amount in controversy analysis.  *See*
25  *Fritsch*, 899 F.3d at 793 ("Among other items, the amount in controversy
26  includes damages (compensatory, punitive, or otherwise), the costs of

27
28

complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract."). If Plaintiff was awarded even a single (1X) multiplier, that figure alone would exceed $5,000,000, based on the general damages sought in Plaintiff's Complaint.

16. Plaintiff's requests for attorney fees should also be factored in to the amount in controversy for removal purposes. *Id.* Using a 25% attorney-fee (contingency) benchmark that is common within this District, Plaintiff's claims place at least an additional $1,498,500 ($5,994,000 x .25) in controversy as to attorneys' fees alone. *Salcido v. Evolution Fresh, Inc.*, No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *8 (C.D. Cal. Jan. 6, 2016) (approving use of 25% of amount in controversy for attorneys' fees calculation on removal); *Dittmar v. Costco Wholesale Corp.*, No. 14-cv-1156-LAB-JLB, 2015 WL 7106636, at *5 (S.D. Cal. Nov. 13, 2015) (explaining that "Ninth Circuit authority supports a 25% benchmark").

17. Finally, Walmart would incur considerable expenses in complying with Plaintiff's requested injunctive relief, should any liability be established. *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016) (explaining that the amount in controversy includes the "costs of complying with an injunction"). Plaintiff's requested injunctive relief appears aimed at requiring Walmart to alter and transform the way it advertises product pricing in the Walmart app and at each of Walmart's store locations, an undertaking that would likely require Walmart to expend substantial resources. (*See, e.g.*, Complaint at ¶ 35.)

18. Simply put, even using the conservative figures noted above and derived from Plaintiff's Complaint, the instant putative nationwide class action places well more than $5,000,000 at controversy in this case.

C.     **Plaintiff's Classes Include More Than 100 Putative Members**

19.     The "number of members of all proposed plaintiff classes in the aggregate" is greater than 100.  *See* 28 U.S.C. § 1332(d)(5).  As mentioned above, Plaintiff asserts that her proposed classes consist of "hundreds of thousands" of Walmart customers, "if not more."  (Complaint at ¶ 18.)

**WALMART'S REMOVAL IS PROCEDURALLY PROPER**

20.     Walmart was served with the Complaint on December 3, 2019, by personal service.  Consistent with 28 U.S.C §1446(a), attached hereto as <u>Exhibit 1</u> are true and correct copies of all process, pleadings, and orders served on Walmart in this action.

21.     Removal of this action by Walmart is timely because Walmart files this Notice of Removal within 30 days of service of the Complaint. *See* 28 U.S.C. §1446(b)(2).

22.     Walmart is the only defendant that has been named and served in this action, and thus each defendant that has been named and served with the Complaint consents to the removal of this action.

23.     Plaintiff filed this case in the Superior Court of California, County of Los Angeles.  Therefore, this case may properly be removed to the Central District of California, Western Division. 28 U.S.C. §§ 84(c)(2), 1441(a).

24.     Consistent with 28 U.S.C. §1446(d), Walmart will promptly provide written notice of removal of this action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Los Angeles.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:          January 2, 2020                    JONES DAY

By:  /s/ Edward S. Chang
            Edward S. Chang

Attorneys for Defendant
WALMART INC.

NOTICE OF REMOVAL OF CIVIL ACTION
Case No. 2:20-cv-0023

- 8 -