Edward S. Chang (State Bar No. 241682)
Justin Potesta (State Bar No. 314133)
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone: +1.949.851.3939
Facsimile:  +1.949.553.7539
echang@jonesday.com
jpotesta@jonesday.com

Attorneys for Defendant
WALMART INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFIA MAYNEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 2:20-cv-00023-DSF-JPR<br><br>Hon. Dale S. Fischer<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION**<br><br>Date: July 13, 2020<br>Time: 1:30 p.m.<br>Courtroom: 7D |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE
2  NOTICE that, consistent with this Court's Order, ECF No. 18, on July 13, 2020, at
3  1:30 p.m., or as soon thereafter as the parties may be heard, in Courtroom 7D of the
4  United States District Court for the Central District of California, located at 350 West
5  1st Street, Los Angeles, California, Defendant Walmart Inc. will, and hereby does,
6  move this Court for an order compelling Plaintiff Sofia Maynez to submit her claims
7  to binding arbitration on an individual basis and for an order staying all proceedings
8  in this case pending completion of arbitration.
9        The Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.
10  §§ 1 *et seq*., and on the grounds that Plaintiff agreed to binding arbitration of
11  Plaintiff's individual disputes with Walmart. Moreover, pursuant to the FAA and the
12  Court's inherent authority, Walmart moves to stay the instant proceedings pending
13  completion of the individual arbitration of this matter. This Motion is based on this
14  Notice of Motion and Motion; the supporting Memorandum of Points and
15  Authorities; the Declarations of Madhav Deverkonda, Paola Catania, Keertimaan
16  Tenneti, and Edward S. Chang; the Request for Judicial Notice; and all pleadings and
17  papers on file in this action, together with such further evidence and argument as may
18  be submitted in responsive briefing and at oral argument. In the event the Court
19  denies this motion to compel arbitration, Walmart expressly reserves its right to
20  challenge Plaintiff's First Amended Complaint as a matter of law and under the
21  Federal Rules of Civil Procedure.
22        This motion is made following the conference of counsel pursuant to Local
23  Rule 7-3, which was conducted on January 10 and 30, and March 3, 2020. (*See*
24  Declaration of Edward S. Chang at ¶¶ 2-4.)
25  //
26  //
27  //
28

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  May 15, 2020 | */s/ Edward S. Chang* |
| 3 | | Edward S. Chang |
| | | Justin Potesta |
| 4 | | JONES DAY |
| | | 3161 Michelson Drive, Suite 800 |
| 5 | | Irvine, California  92612 |
| | | (T) 949.851.3939 |
| 6 | | (F) 949.553.7539 |
| 7 | | Attorneys for Defendant Walmart Inc. |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1
BACKGROUND ....................................................................................................... 2
    I.    Walmart And The Walmart App ............................................................ 2
    II.    Walmart's Terms Of Use And Arbitration Agreement ......................... 2
    III.    Plaintiff's Walmart Account, Purchases, And Agreement To Arbitrate ................................................................................................. 4
    IV.    Plaintiff's Original And Amended Complaint ....................................... 5
LEGAL STANDARD ............................................................................................... 6
ARGUMENT ............................................................................................................. 6
    I.    Plaintiff Agreed to Individual Arbitration ............................................. 7
    II.    The Arbitration Clause Covers This Dispute ........................................ 9
    III.    Plaintiff Seeks Private Injunctive Relief, Which Must Be Arbitrated ............................................................................................. 10
        A.    *McGill* Does Not Apply To This Dispute Because The Arbitration Clause Does Not Waive Public Injunctive Relief ............................................................................................ 11
        B.    Plaintiff Seeks Relief On Behalf Of A Private Class Of Walmart App Users, Not The General Public At Large ........... 11
        C.    Plaintiff's Express Allegations Confirm She Seeks Private Injunctive Relief For A Theory Of Harm That Does Not Seem Plausible To The Reasonable Consumer ........................ 12
    IV.    Arbitration Must Proceed On An Individual Basis ............................. 13
    V.    The Court Should Stay This Action .................................................... 13
CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

Page

**CASES**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................ 6

*Bennett v. Liberty Nat'l Fire Ins. Co.*,
    968 F.2d 969 (9th Cir. 1992) .................................................................................. 6

*Blair v. Rent-A-Ctr., Inc.*,
    928 F.3d 819 (9th Cir. 2019) ................................................................................ 11

*Chiron v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) .............................................................................. 10

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ......................................................... 9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ................................................................................................ 6

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................... 9

*Graf v. Match.com, LLC*,
    2015 WL 4263957 (C.D. Cal. July 10, 2015) ........................................................ 8

*Johnson v. JP Morgan Chase Bank, N.A.*,
    2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ..................................................... 12

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) .................................................................................. 7

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) ................................................................................. 8

*Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*,
　586 F.2d 143 (9th Cir. 1978) .................................................................................. 14

*McGill v. Citibank, N.A.*,
　2 Cal. 5th 945 (2017) ............................................................................................ 11, 13

*Meyer v. Uber Techs., Inc.*,
　868 F.3d 66 (2d Cir. 2017) ..................................................................................... 9

*Mohamed v. Uber Techs., Inc.*,
　2015 WL 3749716 (N.D. Cal. June 9, 2015); 848 F.3d 1201 (9th
　Cir. 2016) ............................................................................................................... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983) .................................................................................................. 6

*Murphy v. DirecTV, Inc.*,
　724 F.3d 1218 (9th Cir. 2012) ............................................................................... 13

*Nguyen v. Barnes & Noble, Inc.*,
　763 F.3d 1171 (9th Cir. 2014) ............................................................................... 7

*Rodriguez v. Experian Services Corp.*,
　2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ....................................................... 8

*Spacil v. Home Away, Inc.*,
　2020 WL 184985 (D. Nev. Jan. 13, 2020) ............................................................ 7

*Tompkins v. 23andMe, Inc.*,
　2014 WL 2903752 (N.D. Cal. June 25, 2014) ...................................................... 8

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
　46 F. App'x 412 (9th Cir. 2002) ............................................................................ 10

*Wilson v. Huuuge, Inc.*,
　944 F.3d 1212 (9th Cir. 2019) ............................................................................... 7

*Wright v. Sirius XM Radio Inc.*,
　2017 WL 4676580 (C.D. Cal. June 1, 2017) ......................................................... 12

# INTRODUCTION

On October 16, 2019, Plaintiff Sofia Maynez ("Plaintiff") filed this putative consumer class action against Defendant Walmart Inc. ("Walmart"), alleging claims under California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"). (*See* Complaint, ECF No. 1-1; *see also* First Amended Complaint ("FAC"), ECF No. 14.) Plaintiff's claims, now asserted solely on behalf of an "Injunctive Relief Class," stem from Walmart's alleged "false advertising" related to her use of Walmart's smart mobile phone application ("Walmart App") to: (1) search for certain items with a specific unit count advertised in the Walmart App, and (2) subsequently purchase those items in a Walmart brick-and-mortar store on May 7, 2019, at a higher price. (FAC at ¶¶ 1, 17.)[1] Plaintiff brings her individual and class claims in a court of law despite agreeing to arbitrate "ALL DISPUTES ARISING OUT OF OR RELATED TO . . . THE RELATIONSHIP BETWEEN [HER] AND WALMART." (Decl. of Paola Catania ("Catania Decl."), Ex. 3 at § 20.)

In fact, Plaintiff agreed to arbitrate her disputes with Walmart on at least ***two*** separate occasions. In April 2019, approximately one month prior to Plaintiff's alleged search of items on the Walmart App and subsequent in-store purchase, Plaintiff placed an order through the Walmart App. In doing so, she agreed to be bound by Walmart's Terms of Use. This agreement governed Plaintiff's use of the Walmart App and included a binding arbitration agreement. Plaintiff again confirmed her agreement to arbitrate by using the Walmart App in May 2019 to search for items to purchase, as alleged in her FAC. Despite her agreement, Plaintiff refuses to arbitrate, improperly seeking to litigate her claims against Walmart in this Court. (*See* Decl. of Edward S. Chang ("Chang Decl.") at ¶¶ 2-4.)

---

[1] In her recently filed FAC, Plaintiff has dismissed all of her damages/restitution claims on behalf of herself and any putative class, and now seeks solely injunctive relief on behalf of herself and a similarly situated class of consumers. (*See* FAC).

As we will demonstrate, all of Plaintiff's claims must be arbitrated pursuant to the Federal Arbitration Act ("FAA"), binding U.S. Supreme Court and California precedent, and the parties' valid and enforceable arbitration agreement. Thus, Walmart respectfully moves this Court for an Order compelling this matter to individual, non-class arbitration, and staying this action under the FAA and the Court's inherent authority pending completion of individual arbitration.

## BACKGROUND

### I.   WALMART AND THE WALMART APP

Walmart is a multinational retail corporation. (Request for Judicial Notice ("RJN") at ¶ 1.) In addition to its brick-and-mortar (retail) stores, Walmart advertises and sells various products through the Walmart App. (*Id.* at ¶ 2.) A customer who wishes to purchase a particular item through the Walmart App must be logged in to a Walmart online customer profile to do so, and must generally complete a standard check-out process to complete his/her purchase (the "Check-Out Process"). (Decl. of Madhav Deverkonda ("Deverkonda Decl.") at ¶ 2.) This standard Check-Out Process includes multiple steps, and requires the user to input and/or review various pieces of information to complete his/her order. (*Id.* at ¶¶ 2-6.) On the final page of the Check-Out Process, the customer must click a blue "Place Order" button to complete his/her order. (*Id.* at ¶ 6.) A customer <u>cannot</u> complete an order through the Walmart App without clicking this button, signifying his/her assent to the Walmart Terms of Use and consummation of his/her transaction. (*Id.*)

### II.   WALMART'S TERMS OF USE AND ARBITRATION AGREEMENT

At the top of the final page of the Check-Out Process, the customer is explicitly instructed to "Review" the information on the page, which also includes the following language: "By clicking Place Order, you agree to Walmart's Updated <u>Privacy Policy</u> and <u>Terms of Use</u>" (the "Acknowledgement Language"). (*Id.* at ¶¶ 5-6.)

When a customer reviews the Acknowledgement Language on the final page

of the Check-Out Process, it appears in close proximity to and above the "Place Order" button, as shown in the screenshot below:

> By clicking Place Order, you agree to Walmart's Updated **Privacy Policy** and **Terms of Use**.
>
> **Place Order**     Est. total **$22.59**

(*Id.* at ¶¶ 5-6.)  If a customer clicks on the bold and underlined words "Privacy Policy" or "Terms of Use" (which are hyperlinks within the Acknowledgment Language), the customer will be taken to Walmart's Privacy Policy or Terms of Use, respectively. (*Id.* at ¶ 6.) Walmart's Terms of Use "govern [the customer's] access to and use of all Walmart Sites." (Catania Decl., Ex. 3 at § 1.)  As expressly defined in the Terms of Use, the phrase "Walmart Sites" includes "the official 'Walmart App' for iPhone and Android." (*Id.*)

As pertinent to this motion, the Terms of Use include a valid and enforceable arbitration agreement governing disputes between Walmart and its individual customers. (*Id.* at § 20.) The arbitration agreement in effect at the time Plaintiff used the Walmart App, and which binds Plaintiff, provides in relevant part:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE

RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.*)  The arbitration agreement also states that "[u]sing or accessing the Walmart Sites," including the Walmart App, "constitutes [the customer's] acceptance of th[e] Arbitration provision." (*Id.*)

### III.   PLAINTIFF'S WALMART ACCOUNT, PURCHASES, AND AGREEMENT TO ARBITRATE

On December 21, 2015, Plaintiff created a Walmart online customer profile using the email address sofialoveszoey@hotmail.com (the "Customer Profile"). (Declaration of Keertimaan Tenneti at ¶ 2.)  On April 8, 2019, at approximately 5:12 p.m., Plaintiff used the Walmart App while logged into her Customer Profile to purchase a Baby Trend Hybrid LX 3-in-1 Car Seat, along with a 3-year protection plan. (Catania Decl. at ¶ 2, Ex. 1.)  To purchase those items and consummate her transaction, Plaintiff completed the standard Walmart App Check-Out Process, including clicking the "Place Order" button, manifesting her assent to Walmart's Terms of Use and the arbitration agreement. (*See* Deverkonda Decl. at ¶¶ 2-6.)  As mentioned above, Plaintiff could not have completed her April 8 purchase unless and until she pressed the "Place Order" button and expressly agreed to be bound by the Terms of Use and arbitration agreement. (*Id.* at ¶ 6.)

According to her FAC, Plaintiff again used the Walmart App on May 7, 2019, "to search for price and availability of baby items she needed at WALMART's various stores in her geographic area." (*See* FAC at ¶ 1.)  Based on the Terms of Use Plaintiff previously accepted, her use of the Walmart App again confirmed and manifested her acceptance of the arbitration agreement. (*See* Catania Decl., Ex. 3 at § 20.)  Plaintiff further alleges that she used the search function within the Walmart

App and "found a 576 count box of Huggies Simply Clean Baby Wipes ('Huggies Wipes') listed for $5.44 and an 84 count box of Pull-Ups Girls' Learning Designs Training Pants ('Huggies Pull Ups') listed for $8.97, both available in Aisle 22 at the WALMART store at 22015 Hawthorne Blvd. in Torrance, California." (FAC at ¶ 1.) Plaintiff then alleges that she traveled to the Torrance Walmart and purchased the Huggies Wipes for $31.84 and the Huggies Pull Ups for $12.54. (*Id.* at ¶¶ 1, 16; *see also* Catania Decl., Ex. 2.)

## IV. PLAINTIFF'S ORIGINAL AND AMENDED COMPLAINT

On October 16, 2019, Plaintiff filed this lawsuit in Los Angeles County Superior Court, asserting her UCL, CLRA, and FAL claims on behalf of herself and two nationwide classes of Walmart App users. (*See* ECF No. 1-1.) Plaintiff sought individual and class relief for damages, restitution, and (in passing) injunctive relief. (*Id.*) On or around January 31, 2020, after meeting and conferring with counsel for Walmart on this motion to compel arbitration, Plaintiff stated her intent to amend her complaint in the face of that motion. (Chang Decl. at ¶ 2.) On February 7, 2020, Plaintiff filed her FAC, eliminating one of her putative classes, removing all claims for monetary damages or restitution, and limiting her request for relief to injunctive relief and attorney fees. (*See* ECF No. 14 at ¶ 17, p.11.)

At bottom, Plaintiff's theory of liability in either version of her complaint is that Walmart "advertis[es] lower prices for certain items on its WALMART app, but actually charg[es] higher prices for the same items at the very store listed in the app for sale of such items." (*Id.* at ¶ 8.) More specifically, the gravamen of Plaintiff's complaint appears to be that the Walmart App displays inaccurate pricing by unit count for a certain item (i.e., an incorrect price for an 84-count package of diapers) as compared to the actual (accurate) price in-store. (*Id.* at ¶¶ 1, 8-16.) Plaintiff does not allege that the pricing in-store was inaccurate, does not allege that she did not receive the items she purchased, does not allege the actual items were mislabeled or defective, and does not allege she was duped or coerced into purchasing the items in-

store.

On January 10 and 31, and March 3, 2020, Walmart's counsel requested that Plaintiff submit her claims to arbitration consistent with the parties' arbitration agreement. (Chang Decl. at ¶¶ 2-4.) Plaintiff refused, necessitating the filing of this motion. (*Id.* at ¶ 4.)

## **LEGAL STANDARD**

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (citations and internal quotation marks omitted). In passing the FAA, Congress established a strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Bennett v. Liberty Nat'l Fire Ins. Co.*, 968 F.2d 969, 971 (9th Cir. 1992). In short, the Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses*, 460 U.S. at 24-25.

## **ARGUMENT**

Given the strong federal policy favoring arbitration, a court considering a motion to compel arbitration plays a very limited role. It determines only: (1) whether the parties entered into a valid arbitration agreement, and (2) whether the agreement encompasses the dispute at issue. *Chiron v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). By placing an order on the Walmart App in April 2019 and by using the Walmart App in May 2019, Plaintiff assented to be

bound by the Terms of Use and entered into a valid and enforceable arbitration agreement with Walmart. Plaintiff's claims against Walmart fall squarely within the scope of that agreement, and thus must be arbitrated as a matter of law.

## I. PLAINTIFF AGREED TO INDIVIDUAL ARBITRATION

As an initial matter, Walmart must simply demonstrate "the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citation omitted). Here, Plaintiff cannot reasonably dispute the existence of a valid arbitration agreement, and that she agreed to arbitrate her individual, non-class disputes with Walmart.

*First*, Plaintiff cannot dispute that she assented to be bound by the Terms of Use and the arbitration agreement. "Under California law, '[m]utual assent may be manifested by written or spoken words, or by conduct," and "acceptance of contract terms may be implied through action or inaction.'" *Id.* (internal citations and quotation marks omitted). "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed" these bed-rock contract principles. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

Courts generally categorize online agreements in one of two ways: "clickwrap" agreements and "browsewrap" agreements. *Id.* at 1175-76. "Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services," while "[b]rowsewrap agreements do not require the user to take any affirmative action to assent to the website terms." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). "[C]lickwrap agreements . . . are commonly upheld by the federal courts." *Spacil v. Home Away, Inc.*, No. 19-cv-00983, 2020 WL 184985, at *4 (D. Nev. Jan. 13, 2020) (citations omitted); *see also Nguyen*, 763 F.3d at 1176 (noting that online agreements where "the user had actual notice of the agreement" are "consistently enforced").

In this case, Plaintiff "agree[d] to Walmart's Updated Privacy Policy and Terms of Use," including the arbitration provision, by clicking the "Place Order"

button to complete her April 8, 2019, order. (Deverkonda Decl. at ¶¶ 2-6.) As the Ninth Circuit has explained, this kind of agreement is enforceable both because (1) Plaintiff was "required to affirmatively acknowledge the agreement" by pressing the "Place Order" button, and because (2) the Walmart App "put[] a reasonably prudent user on inquiry notice of the terms of the contract," due to "the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1176-77. Moreover, it does not matter whether Plaintiff actually read the Terms of Use, since she had "a legitimate *opportunity* to review it." *Mohamed v. Uber Techs., Inc.*, No. 14-cv-5200, 2015 WL 3749716, at *7 (N.D. Cal. June 9, 2015), *rev'd in part on other grounds*, 848 F.3d 1201 (9th Cir. 2016) (citations omitted); *see also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("[A] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.").

Faced with materially similar facts, courts within the Ninth Circuit have universally held that customers who clicked similar buttons to consummate purchases and acknowledge their agreement to terms of use created a binding contract. For example, in *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *6-7 (N.D. Cal. June 25, 2014), a decision affirmed by the Ninth Circuit, the court enforced an online arbitration agreement like the one here, finding that the "Plaintiffs received adequate notice regarding the" terms of service when "each named Plaintiff clicked a box or button that appeared near a hyperlink to the [terms of service] to indicate acceptance." Similarly, in *Rodriguez v. Experian Services Corp.*, No. 15-cv-3553-R, 2015 WL 12656919, at *1-2 (C.D. Cal. Oct. 5, 2015), the Court enforced an online arbitration agreement where the plaintiff pressed a button above the words, "By clicking the button above . . . you agree to our Terms of Use."

The court reached the same result in *Graf v. Match.com, LLC*, No. 15-cv-3911-PA-MRWx, 2015 WL 4263957, at*4 (C.D. Cal. July 10, 2015), enforcing an online

arbitration agreement where the plaintiff user "clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use." And in *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC-KSC, 2014 WL 6606563, at*3 (S.D. Cal. Nov. 5, 2014), the court enforced an online arbitration agreement where the plaintiff "had to click an orange button that read 'PLACE ORDER'" below the text "'By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions.'" These decisions are not outliers. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (similar, applying California law); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-40 (S.D.N.Y. 2012) (similar). The Court should follow the weight of authority and similarly enforce the parties' arbitration agreement here.

*Second*, after initially accepting the Terms of Use through the Walmart App in April 2019, Plaintiff again accepted the arbitration agreement by using the Walmart App in May 2019. The Terms of Use Plaintiff accepted in placing her April 2019 order plainly stated that by "[u]sing or accessing the 'Walmart Sites'"—including the Walmart App—Plaintiff confirmed her acceptance of the Arbitration provision. (Catania Decl., Ex. 3 at § 20.) And here, the gravamen of Plaintiff's case arises from her "use or access" of the Walmart App on May 7, 2019, to search for items to purchase in-store. (*See, e.g.*, FAC at ¶ 1.) Thus, Plaintiff again agreed to the arbitration provision in May 2019 and manifested her assent by continuing to use the Walmart App. Simply put, Plaintiff and Walmart entered into a binding agreement through both Plaintiff's April 2019 order in the Walmart App and her May 2019 use of the Walmart App, which included a valid and enforceable arbitration agreement.

## II. THE ARBITRATION CLAUSE COVERS THIS DISPUTE

In the next step of the analysis, the Court considers only "whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. Here, the

parties' arbitration agreement broadly covers "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN [PLAINTIFF] AND WALMART." (Catania Decl., Ex. 3 at § 20.) Plaintiff's claims for injunctive relief unquestionably "arise out of or relate to" both the Walmart Terms of Use and her relationship with Walmart. *See Chiron*, 207 F.3d at 1131 (explaining that agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching"); *see also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 413 (9th Cir. 2002) ("The [arbitration] clause uses the phrase 'relating to,' which has a broad and inclusive meaning."). Indeed, the central issue in this case is about Plaintiff's personal use of the Walmart App to search for specific items she later purchased in a Walmart store for an allegedly higher price than was advertised in the Walmart App. (*See* FAC ¶¶ 1, 16.) And the Terms of Use "govern [plaintiff's] access to and use of all Walmart Sites," including "the official 'Walmart App' for iPhone and Android." (Catania Decl., Ex. 3 at § 1.) Thus, it is undisputed that the arbitration agreement encompasses Plaintiff's claims.

### III. PLAINTIFF SEEKS PRIVATE INJUNCTIVE RELIEF, WHICH MUST BE ARBITRATED

Plaintiff's counsel has asserted during the meet-and-confer process that the arbitration agreement here does not cover this dispute because Plaintiff's claims are (now) for "public injunctive relief" to remedy alleged ongoing harm to the general public. (Chang Decl. at ¶ 2.) Plaintiff has "doubled down" on this proposition by entirely eliminating any individual or class claims for damages or restitution in her amended complaint, now purportedly seeking only forward-looking injunctive relief. (FAC, ECF No. 14.) However, Plaintiff's argument (and misguided strategy) fails both as a matter of law and fact.

#### A. *McGill* Does Not Apply To This Dispute Because The Arbitration Clause Does Not Waive Public Injunctive Relief

As a threshold matter of law, the Supreme Court of California's decision in

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) is inapposite. In *McGill*, the court held that a "provision in a predispute arbitration agreement that *waives* the right to seek this statutory remedy in *any forum*" was "unenforceable under California law." *McGill*, 2 Cal. 5th at 952 (emphasis added). As the Ninth Circuit has explained, the *McGill* rule "shows no hostility to, and does not prohibit, the arbitration of public injunctions." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 827 (9th Cir. 2019). Instead, the rule "merely prohibits the *waiver* of the right to pursue public injunctive relief in *any forum*." *Id.* (emphasis added). But here, nothing in Walmart's Terms of Use requires Plaintiff to waive the right to seek public injunctive relief, *cf.* Catania Decl., Ex. 3 at § 20 (waiving only class arbitration), and, in any event, Plaintiff's claims are for private, not public, injunctive relief (as discussed in further detail below). Thus, *McGill* does not apply.

      **B.**    **Plaintiff Seeks Relief On Behalf Of A Private Class Of Walmart App Users, Not The General Public At Large**

Plaintiff's claims are not claims for "public injunctive relief" at all, and thus *McGill* is inapplicable for this reason, too. Public injunctive relief is defined as "relief that 'by and large' benefits the general public . . . and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public.'" *McGill*, 2 Cal. 5th at 955 (citations omitted). By contrast, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an ***individual plaintiff***—or to a ***group of individuals similarly situated to the plaintiff***—does not constitute public injunctive relief." *Id.* (emphasis added).

Here, Plaintiff seeks injunctive relief on a class-wide basis only on behalf of those who are "similarly situated" to her—*i.e.*, "users of [Walmart's] e-commerce app." (FAC at ¶ 17.) By her own putative class definition, Plaintiff's proposed class of similarly-situated Walmart customers is "an inherently circumscribed group," rather than "the public 'at large.'" *Johnson v. JP Morgan Chase Bank, N.A.*, No. 17-cv-2477, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (citations omitted); *see*

*also McGill*, 2 Cal. 5th at 960 (rejecting the notion that public injunctive relief may be sought through a class action since "class certification requires 'the existence of both an ascertainable class and a well-defined community of interest among the class members'" and "'the general public' . . . fails to meet this requirement." (citations and quotation marks omitted)). For example, members of the public who do not shop at Walmart or who do not use the Walmart App are not members of Plaintiff's proposed class. And while many people might use the Walmart App, "the size of a class cannot, on its own, elevate a class action seeking injunction into a matter seeking public injunctive relief," as this "would convert any consumer action against a large company into 'public injunctive relief.'" *Johnson*, 2018 WL 4726042, at *7.

### C. Plaintiff's Express Allegations Confirm She Seeks Private Injunctive Relief For A Theory Of Harm That Does Not Seem Plausible To The Reasonable Consumer

Perhaps most importantly, the type of relief Plaintiff seeks is not public injunctive relief based on Plaintiff's own, express allegations seeking an injunction. Plaintiff's FAC only vaguely asks the Court for an "order enjoining Defendant from continuing to engage in the unfair and deceptive business practices" purportedly alleged in the FAC. (FAC at ¶ 40; *see also* ¶ 36 (similar).) But "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief." *Johnson*, 2018 WL 4726042, at *6 (citations omitted). Indeed, these kinds of "vague, generalized" requests for injunctive relief do not turn Plaintiff's private claim of injury into a public one. *Wright v. Sirius XM Radio Inc.*, No. 16-cv-01688-JVS-JCGx, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (concluding that the plaintiff sought private, rather than public, relief where the injunctive relief sought was for an order "enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices").

Instead, to show that the relief she seeks is truly public injunctive relief, Plaintiff must show that this case has "the primary purpose and effect of prohibiting

unlawful acts that threaten *future* injury to the general public." *McGill*, 2 Cal. 5th at 951 (citations omitted).  But even assuming Plaintiff has identified some illegal conduct concerning the Walmart App (she has not), she cannot identify some threatened future injury to the public at large that requires forward-looking injunctive relief.[2]

## IV. ARBITRATION MUST PROCEED ON AN INDIVIDUAL BASIS

Plaintiff must also arbitrate her claims (for injunctive relief or otherwise) on an individual basis.  The Walmart Terms of Use contains an explicit class waiver: "YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION." (Catania Decl., Ex. 3 at § 20.)  As the Ninth Circuit has held, class waivers in arbitration provisions are enforceable. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225-26 (9th Cir. 2012) ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable . . . ." (citing *Concepcion*, 563 U.S. at 1748)).  Accordingly, the Court should compel individual arbitration of Plaintiff's dispute.

## V. THE COURT SHOULD STAY THIS ACTION

Because Plaintiff's claims are subject to contractual arbitration, the Court should stay this case pending arbitration under the provisions of the FAA and this Court's inherent power to manage its own docket. *Martin Marietta Aluminum, Inc.*

---

[2] Walmart believes it is important to explain here that the hypothetical harm Plaintiff complains of (paying a higher price for items in-store than what was purportedly advertised on the Walmart App): (1) does not seem plausible; and (2) is expressly addressed in Walmart's Terms of Use anyway (which explain that pricing discrepancies may occur, though such discrepancy does not appear to have occurred in this case). (*See, e.g.*, Catania Decl., Ex. 3 at § 8(B) ("Pricing or availability errors may occur on the Walmart Sites or through Marketplace Retailers.").)

*v. Gen. Elec. Co.*, 586 F.2d 143, 147-48 (9th Cir. 1978) ("The [Federal Arbitration] Act provides for a stay pending compliance with a contractual arbitration clause."). Absent such a stay, Walmart will be prejudiced by being forced to litigate in this forum despite its agreement with Plaintiff to arbitrate, and any continued litigation would improperly invade the province of the arbitrator while arbitration is pending.

## **CONCLUSION**

Walmart respectfully requests that the Court grant this Motion to Compel Arbitration and stay this case, consistent with the FAA and the Court's inherent authority, pending the outcome of arbitration.

Dated: May 15, 2020                     JONES DAY

By: */s/ Edward S. Chang*
        Edward S. Chang

Attorneys for Defendant
WALMART INC.