# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFIA MAYNEZ, on behalf of herself and others similarly situated,<br>  Plaintiff,<br><br>    v.<br><br>WALMART, INC., et al.,<br>  Defendants. | CV 20-0023 DSF (JPRx)<br><br>Order GRANTING Defendant's Motion to Compel Arbitration and Stay the Proceedings (Dkt. 21) |

  Defendant Walmart, Inc., moves to compel arbitration of claims brought by Plaintiff Sofia Maynez on an individual basis and to stay these proceedings pending completion of the arbitration. Dkt. 21 (Mot.). Plaintiff opposes. Dkt. 30 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. Background

  On April 8, 2019, Plaintiff used Defendant's e-commerce app on her mobile phone (Walmart app) to purchase a Baby Trend Hybrid LX 3-in-1 Car Seat. Dkt. 21-3 (Catania Decl.) ¶ 2; Dkt. 21-4 (Ex. 1). To purchase this item through the Walmart app, Plaintiff clicked the "Place Order" button on the checkout page, which provided: "By clicking Place Order, you agree to Walmart's Updated **Privacy Policy**

and **Terms of Use**." Dkt. 21-2 (Deverkonda Decl.) ¶¶ 5-6. The bolded and underlined phrases are hyperlinks which take the customer to a separate page containing the named policy. Id. ¶ 6; Dkt. 21-6 (Catania Decl., Ex. 3) (Terms of Use). The Terms of Use "govern [the user's] access to and use of all Walmart Sites," including the Walmart app. Terms of Use § 1.

The Terms of Use inform the consumer that "**THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES.**" Id. (emphasis in original). Section 20 of the Terms of Use, titled "Disputes & Arbitration; Applicable Law," provides:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

Id. § 20 (Arbitration Provision). "The arbitrator will have authority to award temporary, interim, or permanent injunctive relief or relief providing for specific performance of these Terms of Use, but only to

2

the extent necessary to provide relief warranted by the individual claim before the arbitrator." Id.

On May 7, 2019, Plaintiff again used the Walmart app to search for the price and availability of baby items at her local Walmart store in Torrance, California. Dkt. 14 (FAC) ¶¶ 9-10. The Walmart app indicated that a box of 576 Huggies baby wipes was available for $5.44 and an 84-pack of Huggies Pull-Ups was available for $8.97. Id. ¶¶ 11-12. Both items were listed as "in stock" at the Torrance Walmart store. Id. Plaintiff visited the store to purchase the Huggies products but found the prices "substantially higher than what was listed . . . in the Walmart app." Id. ¶ 13. In store, the baby wipes cost $12.54 and the Pull-Ups $31.84. Id. ¶¶ 14-15. Plaintiff "nevertheless bought the products" at the store. Id. ¶ 16.

Plaintiff filed a putative class action against Walmart for violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, and False Advertising Law, Cal. Bus. & Prof. Code § 17500, stemming from the incorrect pricing information on the Walmart app. FAC ¶¶ 26-46. She seeks "an order enjoining Defendant from continuing to engage in the unlawful, unfair and fraudulent business practices," but otherwise seeks no damages or retrospective relief. Id., Prayer for Relief ¶¶ 1-5.

## II. Legal Standard

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (If a valid arbitration

agreement exists, "the court must order the parties to proceed to arbitration . . . in accordance with the terms of their agreement"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 938 (9th Cir. 2013) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Generally, a court's role under the FAA is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).

### III. Discussion

Defendant moves to compel arbitration on the grounds that Plaintiff agreed to submit any claims against Walmart to binding arbitration under the Terms of Use of the Walmart app. Plaintiff objects and argues that (1) Defendant has failed to establish a valid agreement to arbitrate between the parties and (2) the Arbitration Provision is unenforceable under California law because it requires Plaintiff to waive her right to seek public injunctive relief in any forum.

### A. Existence of a Valid Arbitration Agreement

When deciding whether there is an agreement to arbitrate, courts generally "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).[1] Where "the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014). Under California law, "[a]n essential element of any contract is the consent of the parties." Donovan v. RRL Corp., 26 Cal. 4th 261, 270 (2001), as modified (Sept. 12, 2001). "Courts must determine whether the outward manifestations of consent would lead a

---

[1] The parties agree that California law applies here. Mot. at 13; Opp'n at 7.

4

reasonable person to believe the offeree has assented to the agreement." Norcia v. Samsung Telecomms Am., LLC, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014)).

Plaintiff argues (1) the evidence submitted by Defendant is "insufficient to establish Plaintiff had the requisite notice of the purported arbitration agreement" and (2) there was no "mutual assent" to arbitrate because "Plaintiff was never aware of the arbitration provision in the [Terms of Use] document, and she never understood Walmart was seeking to obtain her agreement to arbitrate any disputes between herself and Walmart." Opp'n at 5-9. Both arguments fail.

### 1. Plaintiff had notice of the Arbitration Provision

To meet its burden of proving that an agreement to arbitrate exists, Defendant provides the declaration of Madhav Deverkonda, a Director of Engineering who has worked for Walmart since November 2015 and is "responsible for the cart and checkout process on the Walmart mobile application." Deverkonda Decl. ¶ 1. The declaration describes the "checkout process" that customers complete in order to make a purchase through the Walmart app. Id. ¶¶ 2-6. "At the final stage of the Check Out Process, the customer is presented with a page that contains order details and the following sentence: 'By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use.'" Id. ¶ 5. "The words 'Privacy Policy' and 'Terms of Use' . . . are hyperlinks to Walmart's Privacy Policy and Walmart's Terms of Use." Id. "To complete the order, the customer must click a blue 'Place Order' button" that is situated immediately below the "Privacy Policy" and "Terms of Use" agreement. Id. ¶ 6.[2] "The customer cannot complete

---

[2] Deverkonda attaches the following screenshot of the order page showing the "Terms of Use" hyperlink and agreement, Devekonda Decl. ¶ 6:

the order without clicking the 'Place Order' button. Id. Defendant also shows that Plaintiff purchased a car seat through the Walmart app on April 8, 2019. Catania Decl. ¶ 2. This evidence sufficiently shows that the Terms of Use were presented to Plaintiff on the Walmart app and she assented to them when she clicked the "Place Order" button to purchase the car seat.

Plaintiff contends that the Deverkonda Declaration is insufficient because it describes the Walmart app checkout process *today*, but is "irrelevant to what Plaintiff may have actually seen when she used it in 2019." Opp'n at 5-6. Plaintiff focuses on the statement in the declaration that the Walmart app "may be updated from time to time," Deverkonda Decl. ¶ 7, which purportedly "leaves unclear what was actually different when Plaintiff used the Walmart app," Opp'n at 6. However, in the same sentence, Deverkonda declares that "the Check Out Process in the Walmart App described in this declaration was in a *substantially identical format* in April and May 2019," when Plaintiff made her purchase. Deverkonda Decl. ¶ 7 (emphasis added). Plaintiff's nitpicking interpretation of this statement is unreasonable. The Court is satisfied that the checkout process for the Walmart app described in the Deverkonda Declaration accurately reflects the process that Plaintiff encountered in April of 2019.

### 2. Plaintiff agreed to arbitrate her disputes with Defendant when she placed an order through the Walmart app

Plaintiff next argues that there was no mutual assent to arbitrate because "Plaintiff was not required to review the TOU [Terms of Use] document[,] . . . Plaintiff was never aware of the arbitration provision

> By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use.
>
> **Place Order**    Est. total **$22.59**

in the TOU document, and she never understood Walmart was seeking to obtain her agreement to arbitrate any disputes between herself and Walmart." Opp'n at 7. These arguments fall short.

As the Ninth Circuit has explained, "[c]ontracts formed on the Internet come primarily in two flavors":

> "[C]lickwrap" (or "click-through") agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014) (citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 428-30 (2d Cir. 2004)). "The validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." Id. (quoting Van Tassell v. United Mktg. Grp., LLC, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). "[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." Id. "Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement – that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." Id.

The Walmart app required Plaintiff to affirmatively acknowledge and agree to the Terms of Use when she placed an order. Deverkonda Decl. ¶ 5. In a recent unpublished opinion, the Ninth Circuit found the same language and structure used by Walmart "provided sufficient notice for constructive assent" and created "a binding arbitration agreement between" the customer and the app provider. Lee v. Ticketmaster L.L.C., No. 19-15673, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020). The plaintiff in Lee used Ticketmaster's website to purchase event tickets. Id. "[E]ach time he clicked the 'Place Order'

7

button when placing an order for tickets, . . . directly above the button, the website displayed the phrase, 'By clicking "Place Order," you agree to our Terms of Use.'" Id. Like here, "the phrase 'Terms of Use' . . . contained a hyperlink to Ticketmaster's Terms [of Use]." Id. Based on these facts, the circuit court concluded that the plaintiff "validly assented to Ticketmaster's Terms of Use, including the arbitration provision, each time he . . . clicked the 'Place Order.'" Id.

The Walmart app similarly required Plaintiff to "affirmatively acknowledge the Terms of Use before completing h[er] online purchase." Nguyen, 763 F.3d at 1176. And, as described, "the conspicuousness and placement of the 'Terms of Use' hyperlink" on the Walmart app would have provided "a reasonably prudent user [with] inquiry notice of" the Terms of Use agreement. Id. The Court therefore finds that Plaintiff assented to the arbitration clause when she made her April 9, 2019 purchase. Knutson, 771 F.3d at 565 (Under California law, "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement.").[3]

Plaintiff contends there is "no showing of mutual assent here" because she "would not have even known Walmart was attempting to obtain an agreement to arbitrate disputes" based on Defendant's description of the Walmart app. Opp'n at 8-9 (citing Schnabel v. Trilegiant Corp., 697 F.3d 110 (2d Cir. 2012)). However, the cases cited by Plaintiff do not support this argument. In Schnabel, the arbitration agreement at issue "was not shown on the enrollment screen" for defendant's membership service and was transmitted to the plaintiffs

---

[3] The Terms of Use provide that "[u]sing or accessing the 'Walmart Sites'" – which includes the Walmart app – "constitutes . . . acceptance of this Arbitration provision." Terms of Use § 20. Defendant argues that Plaintiff "again accepted" the Arbitration Provision by using the Walmart app in May 2019 to price-shop for baby products. Mot. at 9. Plaintiff does not dispute that any agreement to arbitrate created by her April 2019 Walmart app purchase would also apply to her use of the Walmart app in May 2019. See Opp'n at 9 n.4.

in a separate email only after they enrolled. 697 F.3d at 119-21. The Second Circuit, applying California law, rejected defendant's argument that "plaintiffs were put on inquiry notice of the arbitration provision through the transmission of the terms by email after the initial enrollment and then assented to th[e arbitration] provision by failing to cancel their . . . memberships." <u>Id.</u> at 121. The court explained:

> We do not think that an unsolicited email from an online consumer business puts recipients on inquiry notice of the terms enclosed in that email and those terms' relationship to a service in which the recipients had already enrolled, and that a failure to act affirmatively to cancel the membership will, alone, constitute assent.

<u>Id.</u> at 123. The circumstances here are different in every way. Plaintiff was provided with notice of the Terms of Use at the time of her purchase, she was informed that "[b]y clicking 'Place Order'" she would be agreeing to those terms, and she then placed her order, affirmatively consenting to the Terms of Use and Arbitration Provision. Deverkonda Decl. ¶¶ 2-6.

It is no help to Plaintiff that she "was not required to review the [Terms of Use]" and "was never aware of the arbitration provision in the TOU document." Opp'n at 7; Dkt. 31-1 (Maynez Decl.) ¶¶ 3-4. Under California law, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." <u>Norcia</u>, 845 F.3d at 1284; <u>Lee</u>, 2020 WL 3124256, at *2 (a party "'cannot avoid the terms of [the] contract on the ground that he . . . failed to read it before signing,' especially when he 'had a legitimate opportunity to review it.'" (first quoting <u>Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.</u>, 89 Cal. App. 4th 1042, 1049 (2001); then quoting <u>Mohamed v. Uber Tech., Inc.</u>, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015)). Whether or not Plaintiff actually saw, reviewed, or read the

Terms of Use is not relevant to the question of whether she agreed to them.[4]

The Court therefore concludes that Plaintiff assented to Walmart's Terms of Use and Arbitration Provision. The Court also finds that the Arbitration Provision – which extends broadly to "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART," Terms of Use § 20 – "covers the dispute" at issue in this action. Brennan, 796 F.3d at 1130.[5]

## B. Validity of the Arbitration Provision

Plaintiff next argues that the Arbitration Provision is "void and unenforceable" under California law because "it purports to waive Plaintiff's right to seek public injunctive relief in any forum." Opp'n at 10 (citing McGill v. Citibank, 2 Cal. 5th 945, 954-955 (2017)). Defendant maintains that McGill is inapplicable and the Arbitration

---

[4] Plaintiff also argues – without citation – that there is no evidence of an agreement to arbitrate because she never physically signed the Terms of Use. Opp'n at 7-8 ("Walmart has produced no signed or even initialed document showing Plaintiff agreed to arbitrate her claims, and Plaintiff did not put her signature on any arbitration agreement proposed by Walmart."). Neither California law nor the FAA require a "wet" signature on an arbitration agreement to show assent. See Nguyen, 763 F.3d at 1175 ("One such principle [of California contract law] is the requirement that '[m]utual manifestation of assent, whether by written or spoken word *or by conduct*, is the touchstone of contract.'" (emphasis added) (quoting Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)); Serafin v. Balco Properties Ltd., LLC, 235 Cal. App. 4th 165, 176 (2015) (a "writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement"); Ambler v. BT Americas Inc., 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) ("While the FAA authorizes the court to enforce only written agreements to arbitration . . . it does not require the written agreements to be signed" (citing 9 U.S.C. § 3)).

[5] Plaintiff does not dispute this point.

Provision is valid because (1) Plaintiff is not seeking public injunctive relief in this action and (2) in any event, the Arbitration Provision does not waive Plaintiff's right to obtain public injunctive relief. Mot. at 10-12.

"[P]ublic injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." McGill, 2 Cal. 5th at 955 (quoting Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (1999)). In McGill, the California Supreme Court held that an arbitration provision that waives the right to seek public injunctive relief in any forum is "contrary to California public policy and [] thus unenforceable under California law." Id. at 952, 961; see also Blair v. Rent-A-Ctr., Inc., 928 F.3d 819, 831 (9th Cir. 2019) (holding that "the FAA does not preempt the McGill rule").

Plaintiff identifies three sections of the Walmart app's Arbitration Provision that, read together, allegedly prohibit her from seeking public injunctive relief "in any forum" and render the Arbitration Provision unenforceable:

- (1) "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART . . . WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION," Terms of Use § 20;

- (2) "YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION," id.; and

- (3) "The arbitrator will have authority to award temporary, interim, or permanent injunctive relief or relief providing for specific performance of these Terms of Use, *but only to the extent*

11

> *necessary to provide relief warranted by the individual claim before the arbitrator,"* id. (emphasis added).

The third section, in particular, might be read as a waiver of Plaintiff's right to seek public injunctive relief in arbitration – that is, "relief intended to benefit those other than the individual bringing the claim." Dornaus v. Best Buy Co., No. 18-CV-04085-PJH, 2019 WL 632957, at *4 (N.D. Cal. Feb. 14, 2019) (an arbitration clause providing that "the arbitrator . . . may award relief only on an individual basis" was prohibited under McGill because it "preclude[d] the arbitrator from awarding public injunctive relief").

The Ninth Circuit has held that an arbitration agreement that "prohibits the arbitrator from awarding 'relief that would affect [customers] other than you,' and eliminates any 'right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action' . . . precludes the arbitrator from awarding public injunctive relief" and is unenforceable under McGill. Blair, 928 F.3d at 831. The Arbitration Provision here limits the arbitrator to "provid[ing] relief warranted by the individual claim," but does not prohibit the arbitrator from awarding relief that would affect those other than Plaintiff. That distinction is important. As the California Supreme Court has explained, claims under the UCL and other consumer protection statutes may be asserted as individual claims seeking public injunctive relief. McGill, 2 Cal. 5th at 959. Therefore, on its face, the Arbitration Provision appears to allow Plaintiff to obtain the relief sought in her First Amended Complaint: "an order enjoining Defendant from continuing to . . . advertis[e] lower prices for certain items on its WALMART app, and actually charging higher prices for the same items at the very store listed in the app for sale of such items," applied to all Walmart app users. FAC ¶¶ 29, 36, 39-40, 44-46. To confirm this analysis, the Court ordered supplemental briefing from the parties "on whether the Arbitration Provision contains an unenforceable waiver of Plaintiff's right to seek public injunctive relief in any forum." Dkt. 33 (Order re Suppl. Briefing) at 2. The Court specifically asked Walmart to confirm that the Arbitration Provision allows the arbitrator to

12

provide the relief sought in Plaintiff's FAC "appl[ied] to *all* Walmart app users." Id. at 4.

In its Supplemental Brief, "Walmart concedes that the Arbitration Provision allows the arbitrator . . . to issue an injunction requiring Walmart to correct the issues in the Walmart App alleged in Plaintiff's FAC." Dkt. 34 (D's Suppl.) at 2. "[T]he arbitrator is not limited to fashioning injunctive relief that would somehow apply solely to Plaintiff alone and not to other Walmart App users." Id. Based on these representations, the Court is satisfied that the Arbitration Provision allows Plaintiff to obtain the relief she seeks in arbitration. See Dicarlo v. Moneylion, Inc., No. EDCV 19-1374 PSG (SHKx), 2019 WL 8108731, at *3 (C.D. Cal. Dec. 20, 2019) (provision that preserved the plaintiff's right to obtain in arbitration "all remedies available in an individual lawsuit" did not bar public injunctive relief and was valid under McGill).[6] Because the Arbitration Provision does not waive Plaintiff's right to seek public injunctive relief in any forum, it is valid and enforceable under California law.[7]

## IV. Conclusion

Defendant's Motion to Compel Arbitration of Plaintiff's individual claims is GRANTED and Plaintiff is ORDERED to submit to

---

[6] Plaintiff nitpicks Walmart's statement and contends "Walmart's position appears to be that any injunctive relief the arbitrator may order can address only correcting pricing misrepresentations for the two in-store items Plaintiff already saw," rather than all pricing misrepresentations on the Walmart app. Dkt. 35 (P's Suppl.) at 2-3. The Court disagrees with this narrow reading of Walmart's Supplemental Brief. In any event, the Court retains jurisdiction over this action and Plaintiff may seek appropriate relief from the Court in the event Walmart attempts to improperly limit the scope of Plaintiff's relief in arbitration.

[7] Because the Arbitration Provision is valid and does not bar Plaintiff from seeking public injunctive relief, the Court does not address the parties' arguments about whether Plaintiff in fact seeks a public injunction.

arbitration pursuant to the terms of the Arbitration Provision, see 9 U.S.C. § 5, if she wishes to pursue her individual claims.

The action is STAYED pending resolution of the arbitration. See 9 U.S.C. § 3.

The parties are to file a joint status report every 120 days, with the first report due December 18, 2020. Each report must state on the cover page the date the next report is due. The parties must advise the Court within 30 days of issuance of the final arbitration decision

IT IS SO ORDERED.

Date: August 14, 2020    _____
                         Dale S. Fischer
                         United States District Judge